IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**RALPH DAVID PORTERFIELD,**

    **Plaintiff,**

vs.                                                 **CIVIL ACTION NO. 3:15-13629**

**CAROLYN W. COLVIN
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Presently pending before the Court are parties' cross-motions for Judgment on the Pleadings. (Document Nos. 13 and 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge.[1] (Document Nos. 5 and 6.)

The Plaintiff, Ralph David Porterfield, hereinafter "Claimant", filed an application for SSI on September 17, 2012 (protective filing date), alleging disability since August 25, 2001[2], due to "bipolar disorder, alcohol and drug problem, anemia, hepatitis, depression, high blood pressure, high triglycerides, and acid reflux".[3] (Tr. at 225.) Claimant's application was denied initially and

---

[1] The undersigned was assigned to this matter by Order entered January 5, 2016 due to the retirement of U.S. Magistrate Judge R. Clarke VanDervort. (Document No. 11.)
[2] At the hearing, Claimant amended his alleged onset date to the date of his application. (Tr. at 12, 58.)
[3] On his form Disability Report – Appeal, submitted on January 17, 2013, Claimant asserted that since his last disability report dated November 26, 2012, "I feel more depressed. I don't eat very well. I don't sleep very well. I get bad headaches. I have back pain". (Tr. at 256.)

upon reconsideration. (Tr. at 154-158, 162-164.) On January 17, 2013, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 165-167.) A hearing was held on March 13, 2014, before the Honorable Edward E. Evans. (Tr. at 54-93.) The ALJ denied his claim by decision dated April 8, 2014. (Tr. at 9-29.) The ALJ's decision became the final decision of the Commissioner on July 29, 2015 when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On October 1, 2015, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a prima facie case of

disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. § 416.920a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).[4] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §

---

[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the application date, September 17, 2012. (Tr. at 14, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: alcohol/substance abuse disorder; alcoholic hepatitis; fatty liver/liver disease; anemia; depression; and anxiety. (Id., Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform medium work except that:

> he may never climb ropes, ladders, or scaffolds; may never [be] exposed to hazards; may occasionally interact with supervisors, colleagues, and the public; that his needs to be off task can be accommodated by customary breaks; and that he can understand, remember, and carry out simple one and two step instructions.

(Tr. at 16, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 23, Finding No. 5.) At step five, the ALJ found: that Claimant was born on August 16, 1974 and 38 years old on the application date, making him a younger individual; that Claimant had at least a high school education and can communicate in English; that transferability of job skills

immaterial because Claimant had no past relevant work experience; that based on Claimant's age, education, work experience, and RFC, there were significant numbers of jobs in the national economy that Claimant could perform. (Id., Finding Nos. 6, 7, 8, 9.) On this basis, benefits were denied. (Tr. at 24, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Beginning in 2003, Claimant had previous claims for DIB and SSI that finally concluded in 2011 after his claims were denied and remanded twice for further proceedings; ultimately, ALJ Toby J. Buel, Sr. denied his claims because Claimant's substance abuse disorder was found to be

a contributing factor material to the determination of disability. (Tr. at 94-104, 105-117, 118-129.) In the instant matter, Claimant was 39 years old at the time of the ALJ's decision. (Tr. at 64.) He graduated high school and attended West Virginia University for three years; he had not worked since 2007. (Tr. at 64, 226.)

Issue on Appeal

The sole argument in this appeal is whether the ALJ's decision is not based on substantial evidence because he failed to consider Claimant's treating psychiatrist's opinion. (Document No. 13 at 4.)

The Relevant Evidence of Record[5]

The Court has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Claimant's Daily Activities:

In his Function Report and his testimony, Claimant stated that he had no problems with personal care; and he remained able to prepare meals, clean, wash laundry, take out the trash, wash the dishes, take walks, exercise, go to church, shop with his father, watch television, read books, play cards with his buddies, and collect stamps. (Tr. at 65, 72, 240-246.) He testified that he got along with people most of the time. (Tr. at 72.)

Prestera Center Treatment Records:

Claimant received mental health treatment at the Prestera Center during the relevant period. (Tr. at 670-79, 720-22, 1379-1423.) He also had a significant history of alcohol abuse. (Tr. at 512.) At his July 2012 medication management appointment with his treating psychiatrist, Dr. Rownak

---

[5] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Afroz, Claimant reported that he was doing "good". (Tr. at 720.) Although fragmented, he was sleeping eight-to-nine hours a night with Trazodone. (Id.) His mood was stable and he had no new complaints. (Id.) His affect was appropriate and he denied hallucinations; his mental status examination was normal. (Tr. at 720-721.) Dr. Afroz assessed bipolar disorder, polysubstance dependence in sustained full remission, and cannabis abuse. (Tr. at 721.) She assessed a GAF score of 60.[6] (Tr. at 722.) She treated Claimant with Prozac, Risperdal, and Trazodone. (Id.)

Claimant saw therapist Erica Miller on October 9, 2012. (Tr. at 670-679.) With respect to his level of functioning, she noted that he was independent in his activities of daily living and he had limited impairment in social situations/maintaining relationships. (Tr. at 672.) On mental status examination, although his coping ability was deficient, Claimant's speech, thought content, and appearance were normal. (Tr. at 675.) He was oriented to person, place, situation, and time; his recall memory was normal; and his affect was appropriate. (Tr. at 675-676.) Ms. Miller assessed a GAF score of 60. (Tr. at 676.)

On October 20, 2012, during another medication management appointment with Dr. Afroz, Claimant reported that he was doing "alright". (Tr. at 1379-1381.) His mood was stable and he had no new complaints. (Tr. at 1379.) On mental status examination, Claimant's appearance was normal, he was cooperative and pleasant, and his speech was normal. (Id.) His affect was appropriate, he denied hallucinations, and his thought processes were goal directed and logical.

---

[6] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

(Id.) His thought content was also appropriate. (Tr. at 1380.) Dr. Afroz assessed a GAF score of 60 and continued Claimant's medications (Tr. at 1381.); Dr. Afroz again continued his medications in January 2013. (Tr. at 1398.)

At Claimant's April 13, 2013 appointment, Dr. Afroz noted that he smelled of alcohol, although he denied drinking that day, but admitted to drinking the night before; he stated he was "miserable". (Tr. at 1401.) He also complained of hearing voices. (Id.) Dr. Afroz added a diagnosis of continuous alcohol abuse to his existing diagnoses. (Tr. at 1403.) She assessed a GAF score of 60, and adjusted Claimant's medications. (Id.)

On May 4, 2013, Claimant reported to Dr. Afroz that he was "doing good" and feeling much better. (Tr. at 1405.) Dr. Afroz noted that he did not smell like alcohol as he had at his prior appointment. (Id.) Dr. Afroz assessed a GAF score of 60 and continued his medications. (Tr. at 1407.)

Claimant next saw Dr. Afroz on July 27, 2013 and reported that he was "doing good," but his sleep was "not so good". (Tr. at 1409.) Dr. Afroz noted that he smelled of alcohol "as he always does", but "[h]e says, he has reduced drinking." (Id.) He reported that he was hearing voices, but stated that it was "better". (Id.) Claimant's mental status examination was normal other than that he was unkempt and endorsed auditory hallucinations. (Id.) Dr. Afroz assessed a GAF score of 60 and continued his medications. (Tr. at 1412.)

At Claimant's October 26, 2013 appointment with Dr. Afroz, he reported that he was "doing good". (Tr. at 1414.) Dr. Afroz noted that he smelled of alcohol "as he always does. He says, he reduced drinking from 3 quarts to 1. Last mj use per pt is 1 month ago." (Id.) Claimant reported hearing voices, but that it was "better". (Id.) Dr. Afroz assessed a GAF score of 58 and

continued his medications. (Tr. at 1417.)

On February 1, 2014, Claimant reported to Dr. Afroz that he was "doing good"; she noted that he was very upbeat, his mood was stable, and he had no complaints. (Tr. at 1419.) He was happy that the weather had warmed up some. (Id.) Dr. Afroz noted that Claimant did not smell of alcohol. (Id.) Dr. Afroz assessed a GAF score of 60 and continued his medications. (Tr. at 1421-1422.)

Ability to Do Work-Related Activities (Mental):

On March 10, 2014, Dr. Afroz completed a medical source statement and concluded that Claimant would miss three-to-four days of work a month due to his impairments. (Tr. at 1488-1491.) Dr. Afroz noted that Claimant's diagnoses were bipolar disorder, alcohol abuse, and polysubstance dependence in remission and that his current GAF score was 55. (Tr. at 1488.) She further stated that his mental impairment and symptoms were "moderate to severe". (Id.) She wrote: "In my professional opinion, ongoing alcohol abuse is against good prognosis". (Id.)

With respect to work-related activities, Dr. Afroz opined that Claimant had no limitation in his ability to: understand, remember, and carry out simple instructions; and interact appropriately with the public. (Tr. at 1489.) Dr. Afroz also opined that Claimant had a mild limitation in his ability to make judgments on simple work-related decisions and to interact appropriately with supervisors/co-workers. (Id.) Dr. Afroz further opined that Claimant had a moderate limitation (defined as "more than slight limitations, but the individual is still able to function satisfactorily") in his ability to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions; and to respond appropriately to usual work situations and to changes in routine work setting. (Id.)

In regards to Claimant's signs and symptoms, Dr. Afroz checked the "marked"[7] box for "pervasive loss of interest in almost all activities" (Id.); she checked the "moderate" boxes for "persistent disturbances of mood or affect", "intense and unstable interpersonal relationships", and "deeply ingrained, maladaptive patterns of behavior". (Tr. at 1489-1490.) She opined that on average, Claimant would be absent from work three-to-four days per month. (Tr. at 1490.) In response to the question seeking a narrative description of "any additional reasons not covered above, why your patient would have difficult[ies] working at a regular job on a sustained basis," Dr. Afroz wrote "marked". (Tr. at 1491.) Dr. Afroz wrote that Claimant "will need reassessment while sober". (Id.) She was unable to determine at that time whether he could manage benefits in his own best interest. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant's treating psychiatrist, Dr. Rownak Afroz, opined that he would be absent from work three to four days per month as a result of his impairments; the vocational expert opined that no employment would exist for Claimant under such conditions. (Id. at 5.) Claimant contends that the ALJ improperly disregarded legal procedures when he gave Dr. Afroz's opinion little weight, and should have sought clarification for her since he found the evidence inadequate. (Id. at 6-7.) Claimant requests his claim for SSI be granted, or alternatively, this matter be remanded for further proceedings. (Id. at 7.)

In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed because he properly found Dr. Afroz's opinion was internally inconsistent, was inconsistent with her own treatment notes, was inconsistent with the evidence of

---

[7] The form defined "marked" as "serious limitations in this area. Substantial loss in the ability to effectively function." (Tr. at 1488-1491.)

11

record, and she did not support her opinion with objective evidence or reasons. (Document No. 14 at 8-10.) Finally, the Commissioner contends that Claimant's assertion that the ALJ should have contacted Dr. Afroz for further evidence is incorrect as a matter of law because Claimant had the burden to prove he was disabled, and there was sufficient evidence from which the ALJ could render a decision. (Id. at 10-11.)

Analysis

Evaluation of Opinion Evidence:

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 416.927(c)(2). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. Id. Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the

factors listed in 20 C.F.R. § 416.927(c)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(c)(2).

In this case, the ALJ reviewed Dr. Afroz's findings noted *supra* in her medical source statement. (Tr. at 22-23.) The ALJ then gave "little weight" to this opinion "because it is inconsistent with the overall objective evidence that shows stable mood, appropriate and euthymic affect, and full orientation." (Tr. at 23.) The ALJ cited Exhibits D5F, D6F, and D8F in support of this conclusion.[8] (Id.) The ALJ noted further that Dr. Afroz "did not set forth objective evidence to support her opinion." (Id.) Throughout the written decision, the ALJ noted that Claimant's symptoms related to depression, agitation, anxiety, appetite changes and sleep disturbances were treated with medications, and that the medication appeared to "adequately control his symptoms." (Tr. at 14-15, 18, 21.) Claimant has a significant history of alcohol and drug abuse, and the ALJ noted that the medical records indicated that he had reduced his consumption of alcohol and marijuana, which Claimant confirmed in his hearing testimony.[9] (Tr. at 14, 17, 18, 19, 21, 22.)

After a review of the relevant medical evidence from the Prestera Center, the undersigned finds that the ALJ's evaluation of Dr. Afroz's March 2014 medical source statement reasonable. Indeed, Dr. Afroz provided no references to the objective medical record to support her opinion,

---

[8] These Exhibits contain the treatment records from Prestera Center, discussed *supra* in this Memorandum Opinion. The undersigned further notes that the ALJ examined these records throughout the written decision. (Tr. at 14, 15, 18, 21, 22, 23, 24.)
[9] The ALJ also noted that there was "no evidence of treatment for substance abuse." (Tr. at 17.)

despite her immediate access to the "detailed, longitudinal picture" of Claimant's disability. Further, writing only the word "marked" in response to a direct query as to why her patient would have difficulties in maintaining consistent employment without providing any further explanation gives nothing to the adjudicator that would necessitate giving her opinion "controlling weight" under the Regulations, Social Security Rulings, or controlling case law. The undersigned finds that the ALJ's affording "little weight" to Dr. Afroz's opinion under the circumstances "rational". Oppenheim, at 397.

Consistent with the undersigned's finding regarding the evaluation of this opinion evidence, the ALJ's giving "little weight" to the vocational expert's testimonial opinion that Claimant would be precluded from employment if he was off work three to four times per month[10] is likewise rational: The ALJ explained that "it is not consistent with the overall objective evidence and the claimant's treatment history" and because Claimant's "impairments seem to be adequately controlled with medications and others are merely observed for changes with no treatment at this point." (Tr. at 24.) The ALJ cited numerous Exhibits in support of this conclusion, namely, Exhibits D3F, D4F, D5F, D6F, D8F, and D9F.[11] (Id.) In short, the ALJ's findings and conclusions were supported by specific citations to the evidence of record, and are therefore based on substantial evidence. See, generally, Richardson v. Perales, 402 U.S. 389, 390 (1971) ("The

---

[10] The written decision states "three to four times a week", however, this appears to be a scrivener's error, because Dr. Afroz's medical source statement and the hypothetical question posed to the vocational expert by Claimant's counsel both indicated "three to four times a month". (Tr. at 91, 1490.)

[11] In addition to Prestera Center treatment notes, the ALJ references the office treatment records and the laboratory results dated October 26, 2011 through August 2, 2012 from University Physicians and Surgeons (Tr. at 365-508.), hospital records dated June 14, 2012 through August 2, 2012 from Cabell Huntington Hospital (Tr. at 509-622.), and office treatment records dated July 26, 2012 through February 12, 2014 from St. Mary's Family Care Highlawn. (Tr. at 1432-1487.)

findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

To address Claimant's contention that the ALJ "should have sought clarification or additional evidence from Dr. Afroz as required by 20 C.F.R. § 404.1512(e)[12]" (Document No. 13 at 7.), the undersigned notes that the Regulation states "[g]enerally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources." There is nothing in the record that indicated that Dr. Afroz's evidence was incomplete or that additional evidence from Claimant's own medical sources were forthcoming, indeed, from the administrative hearing the colloquy between the ALJ and Claimant's counsel proved as much:

ALJ: And are there any other documents that I have not mentioned?

ATTY: No, Your Honor.

ALJ: Do you have any new exhibits that will, that are, or will be offered into evidence?

ATTY: No, Your Honor.

ALJ: Is the record complete?

ATTY: Yes, Your Honor.

ALJ: Any objection to those documents being admitted into the record?

ATTY: No objections.

(Tr. at 57.)

Finally, the undersigned notes that pursuant to 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability *unless he furnishes* such medical and other evidence of the

---

[12] This matter concerns Claimant's application for SSI benefits, therefore Section 416.912(e) would apply, however, because both Sections mirror each other, this clerical error has no bearing on this analysis.

existence thereof as the Commissioner of Social Security may require") (emphasis added). The burden lies with the claimant because he is "in a better position to provide information about his own . . . condition." Bowen v. Yuckert, 482 U.S. 137, 147 n.5 (1987); 20 C.F.R. § 416.912(a). Accordingly, the undersigned agrees with the Commissioner that Claimant's argument on this issue lacks merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, the Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is hereby **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

ENTER: January 24, 2017.

_____
Omar J. Aboulhosn
United States Magistrate Judge